**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL M. HARRISON AND MELINDA HARRISON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 1:25-cv-03764 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| RAVI ANAND; AND RAVI ANAND P.C. | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Daniel M. Harrison and Melinda Harrison ("Plaintiffs"), brought suit against Defendants, Ravi Anand P.C. and Ravi Anand ("Defendants"), alleging Defendants negligently transferred Plaintiffs' funds for a real estate transaction to a scammer and refused to relinquish the remaining funds back to Plaintiffs. Before the Court is Defendants' Motion to Dismiss ("Motion") [15], pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendants' Motion.

**BACKGROUND**

Unless otherwise noted, the following factual allegations are taken from Plaintiffs' Complaint, Dkt. 1, and are assumed true for purposes of resolving these Motions. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

This case arises from an email spoofing scheme that caused Plaintiffs to wire their $72,246 home down payment to Defendants. The Defendants received those funds, disbursed a substantial amount of the funds to third party scammers, without conducting any diligence into the source of the

1

money, and retained the remainder as an "attorney's fee." Plaintiffs allege Defendants' conduct constitutes negligence and conversion under Illinois law.

### A. The Real Estate Transaction

On or about January 3, 2021, Plaintiffs executed a contract with Stone Martin Builders LLC ("Stone Martin"), a construction LLC, to purchase a home located in Athens, Alabama. To initiate the closing, Plaintiffs used Stone Martin's tablet to input all relevant information related to the purchase and sale, including the names and contact information for the purchaser(s), real estate agents, lenders, closing attorneys, among other private and confidential information.

The following entities were legitimate parties involved in the Alabama real estate transaction. Although their data breach(es) possibly gave rise to the email spoofing scheme, they are not defendants in this action or participants in the alleged wrongdoing: (1)Stone Martin Builders LLC ("Stone Martin"), the home builder and seller; (2) CB&S Bank, Inc. ("CB&S"), the lender providing financing for the purchase; and (3)Legend Realty Madison, LLC ("Legend Realty"), the real estate broker for Martha Collins, Plaintiff's real estate agent.

### B. The Email Spoofing Scheme

Sometime between January 3, 2021, and February 3, 2021, a data and information breach occurred, from either Stone Martin, CB&S, and/or Legend Realty Madison, LLC, compromising Plaintiffs' sale and purchase information. Unbeknownst to Plaintiffs, their information was disclosed to third-party scammers who created fake email accounts, or "spoofed" email accounts, resembling those of the legitimate real estate parties, CB&S and Legend Realty. The scammers then intercepted communications related to Plaintiffs' closing.

Using the spoofed emails, the scammers transmitted wiring instructions which falsely appeared to originate from the legitimate participants in the transaction. On or about February 3, 2021, the scammers sent fraudulent wiring instructions to Plaintiffs, falsely purporting to be the legitimate

participants in the transaction. Relying on the instructions in the spoofed emails, Plaintiffs wired $72,246 for their down payment of the house on February 4, 2021, to Defendants in this action.

### C. Defendants and the "Dog Bite Scam"

Defendants, an Illinois-licensed attorney and his law firm, had no involvement in Plaintiffs' original real estate transaction. Their involvement arises from their alleged failure to conduct any diligence before receiving a large, unexpected sum from Plaintiffs and disbursing those funds to an illegitimate, unknown source.

Shortly before receiving Plaintiffs down payment funds, Defendants agreed to act as an intermediary to collect and forward funds on behalf of an unsolicited, unknown, prospective "dog bite client."[1] (Dkt. 1 at *6.) Defendants then received $72,246 wired to their account by an unknown third party. Without conducting any diligence into the source or legitimacy of those funds and based on instructions by the prospective "dog bit client," Defendants disbursed approximately $54,184.50 of Plaintiffs' funds to the unknown "dog bite client" and retained the remaining $18,061.50, as an attorney's fee. (Dkt. 1 at *8.)

### D. Discovery of the Scam and Alleged Resulting Harm

After the scheme was discovered, Plaintiffs demanded return of the remaining funds held by Defendants. Defendants did not return those funds until approximately ten months later, after they were named as defendants in related litigation.[2] As a result of the misdirected wire transfer of their down payment, Plaintiffs were required to secure replacement funds to complete the purchase of the

---

[1] Plaintiffs assert the "dog bite" scam is a widely documented scheme targeting attorneys. A prospective "client" typically purporting to be located overseas, contacts an attorney claiming to have obtained a personal injury settlement they are facing issues collecting the proceeds from. The attorney is then asked to act as a pass-through intermediary to receive and forward the funds in exchange for a contingency fee disproportionate to the minimal effort required. Plaintiffs allege that Defendants were on notice of this type of scheme. (Dkt. 1 at *6.)

[2] *See Harrison v. Stone Martin Builders LLC*, CV-2022-900123-CEH; (Dkt. 21-1 at *1.)

Alabama home. Plaintiffs borrowed from their retirement accounts and were unable to replenish those funds within the required timeframe, resulting in financial penalties and additional losses. *Id.*

Plaintiffs filed the present suit, alleging Defendants' participation in the dog bite scam and their refusal to return the remaining funds to Plaintiffs constituted negligence and conversion under Illinois law.[3] Although the underlying real estate transaction occurred in Alabama, Plaintiffs bring their claims in this district because Defendants are both citizens of Illinois, with their principal office in Chicago, where the relevant conduct occurred. *See* 28 U.S.C. § 1391(a)(2) (venue is proper where a substantial part of the events giving rise to the claims occurred).

## LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction. *Choice v. Kohn Law Firms, S.C.*, 77 F.4th 636, 638–39 (7th Cir. 2023). The party asserting jurisdiction has the burden of establishing it under Rule 12(b)(1). *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). Where a defendant challenges the amount-in-controversy necessary to assert federal jurisdiction, the plaintiff must support their assertions with "competent proof" of damages and do more than "point to the theoretical availability of certain categories of damages." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009); *American Bankers Life Assurance of Fla v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003). The court will find subject matter jurisdiction on the basis of the plaintiff's complaint unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Smith v. American General Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003). "Once the facts have been established, uncertainty about

---

[3] The Court notes that, independent of the legal claims resolved herein, the conduct alleged raises serious questions about Defendants' professional conduct. The Court will therefore refer this matter to the Attorney Registration and Disciplinary Commission of Illinois for any further review it deems appropriate.

4

whether the plaintiff can prove its substantive claim, and whether damages will exceed the [jurisdictional] threshold, does not justify dismissal." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). The plaintiff must prove the jurisdictional facts by a "preponderance of the evidence." *Rubel v. Pfizer, Inc.,* 361 F.3d 1016, 1018 (7th Cir. 2004).

### B. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## DISCUSSION

### I.     Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendants assert Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction for failing to meet the amount-in-controversy requirement necessary to assert federal jurisdiction. (Dkt. 15 at 4.) Federal courts have diversity jurisdiction where the parties are completely diverse, and the amount-in-controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). Complete diversity requires that "no defendant [] share the same state citizenship as any plaintiff." *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 571 (7th Cir. 2021) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). For purposes of diversity, an individual is a citizen of the state in which he is domiciled, and a corporation is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *See also*

5

*Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). Because it is uncontested that the parties are completely diverse, the Court's analysis is limited to whether Plaintiffs' claims meet the $75,000 amount-in-controversy threshold.

Defendants argue Plaintiffs have not pled sufficient facts supporting that the amount-in-controversy exceeds $75,000. (Dkt. 21 at *1.) Specifically, Defendants contend that because Plaintiffs' negligence claim sounds in professional negligence, and because Illinois law does not permit recovery of such damages in a legal-malpractice action, Plaintiffs' claims for emotional distress and punitive damages are legally unavailable. Defendants further argue that, if Plaintiffs' conversion claim is dismissed, the remaining alleged damages are insufficient, as a matter of law, to meet the jurisdictional threshold. By contrast, Plaintiffs maintain that they have identified specific monetary damages of $61,684.50 as well as penalties of approximately $7,500. Thus, to satisfy the jurisdictional minimum, a jury would only need to award an additional $13,315.50 in punitive damages or damages for emotional distress or mental anguish.

The Court agrees with Plaintiffs that, at the pleading stage, it cannot conclude, to a legal certainty, that Plaintiffs are barred from recovering damages sufficient to meet the amount-in-controversy requirement. Had Plaintiffs' brought their negligence claim as a legal-malpractice claim, they would be foreclosed from recovery of emotional distress and punitive damages under Illinois law, absent any allegations of willful and wonton misconduct. *See* 735 ILCS 5/2-1115; *Tri-G, Inc. v. Burke, Bosselman & Weaver,* 222 Ill. 2d 218, 305 Ill. Dec. 584, 856 N.E.2d 389, 406–407 (2006) (limiting damages in legal malpractice to those proximately caused by the attorney's negligence and rejecting speculative or improper damage theories). That limitation, however, only applies to claims arising from an attorney-client relationship and the breach of professional duties owed within it. Plaintiffs do not plead a legal malpractice claim, and in fact, expressly disclaim any attorney-client relationship. Because the malpractice limitation does not apply to Plaintiffs' claims as pled, emotional distress and

punitive damages are not legally unavailable, like Defendants suggest. Furthermore, even if the Court were to dismiss Plaintiffs' negligence claim, that would not deprive the Court of subject-matter jurisdiction. The amount alleged in the complaint controls so long as it is asserted in good faith, and dismissal is warranted only where it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount. *Meridian,* 441 F.3d at 541. Once the facts have been established, uncertainty about whether Plaintiffs can prove their substantive claim, and whether damages will exceed the jurisdictional threshold, does not justify dismissal. *Id.* at 543.

Notwithstanding the Court's determination that Plaintiffs' negligence claim is legally available, Plaintiffs' conversion claim independently supports subject-matter jurisdiction. Conversion permits recovery of compensatory damages for the value of property wrongfully detained and, in appropriate circumstances, punitive damages. Plaintiffs allege specific, concrete monetary losses arising from the misdirected wire transfer and Defendants' refusal to return the funds—specifically, that they were forced to withdraw money from their retirement accounts and incur tax penalties and related losses to complete their real estate transaction. Those losses approach the jurisdictional minimum, and both compensatory and punitive damages are legally available on a conversion theory. Plaintiffs have therefore sufficiently alleged the theoretical availability of certain categories of damages to meet the amount-in controversy requirement. Since Plaintiffs plausibly allege a conversion claim supported by specific damages approaching the jurisdictional floor, the Court cannot conclude, to a legal certainty, that Plaintiffs are legally foreclosed from recovering the jurisdictional minimum.

Accordingly, dismissal for lack of subject matter jurisdiction is not warranted at this stage.

## I.      Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendants next argue Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) for falling outside of the statute of limitations and failing to state a claim on the merits. (Dkt. 15 at *5.)

### A. Statute of Limitations Analysis

Defendants argue that Plaintiffs' claims are barred by Illinois's two-year statute of limitations for legal malpractice claims under 735 ILCS 5/13-214.3(b). (Dkt. 15 at *6.) They contend that Plaintiffs closed their real estate purchase on or about February 6th, 2021, after the original down payment was stolen in the scam and therefore knew or should have known of the injury by that date. Because Plaintiffs did not file this action until April 8th, 2025, Defendants argue the Complaint is untimely. (Dkt. 15 at *7.) Defendants further argue that Plaintiffs cannot rely on Illinois savings statute, 735 ILCS 5/13-217, because none of its enumerated scenarios apply. They contend that the prior Alabama action was dismissed by an Alabama state court for lack of personal jurisdiction and insufficiency of service, not by a federal District Court and not for want of prosecution. (Dkt. 15 at *7.) Defendants maintain that § 13-217 applies only when an action is voluntarily dismissed or dismissed by a United States District court for lack of jurisdiction or improper venue and therefore does not preserve Plaintiffs' claims here.

Plaintiffs respond that their claims are timely under the Illinois savings statute because the prior Alabama action was voluntarily dismissed by Plaintiffs. (Dkt. 21 at *5.) Specifically, Plaintiffs argue that under Alabama Rule of Civil Procedure 41(a)(1)(i), a plaintiff may voluntarily dismiss an action without a court order, and without prejudice, by filing a notice of dismissal *before* the defendant serves an answer or moves for summary judgment. Plaintiffs filed such a notice *before* Defendants answered or moved for summary judgment. (Dkt. 21, at *5.) It was only *after* Plaintiffs' notice of dismissal that the trial court entered its order dismissing the claims. Under Alabama law, a properly filed notice of voluntary dismissal is self-executing and "deprives the trial court of authority" to take further action. *Walker Bros. Inv., Inc. v. City of Mobile*, 252 So. 3d 57, 66 (Ala. 2017). Because the dismissal was voluntary, as a matter of Alabama law, Plaintiffs contend it satisfies § 13-217's voluntary dismissal provision. (Dkt. 21 at *6.) Plaintiffs further assert that federal courts must give full faith

8

and credit to the effect of the Alabama dismissal under 28 U.S.C. § 1738, and that Illinois law governs whether the dismissal qualifies as "voluntary" for purposes of the saving statute. Having refiled within one year of that voluntary dismissal, Plaintiffs assert the present action is timely.

Based on the record before the Court, it will not dismiss Plaintiff's claims as untimely. Illinois law governs whether plaintiffs may invoke the Illinois savings statute. *First Midwest Bank v. Cobo,* 2018 IL 123038, 124 N.E.3d 926, 930 (Ill. 2018). Although the prior action was filed in Alabama State court, federal courts must give full faith and credit to the effect of that dismissal under 28 U.S.C. § 1738, while applying Illinois law to determine the legal consequences of the dismissal for purposes of § 13-217. Whether a prior dismissal qualifies as a "voluntary dismissal" under the Illinois savings statute is therefore a question of Illinois law, informed by the nature of the dismissal under the law of the rendering state. *See Dvorak v. Granite Creek GP Flexcap I*, LLC, 908 F.3d 248, 251 (7th Cir. 2018) (finding that although federal court calls a stipulated dismissal a voluntary dismissal by the plaintiff does not necessarily make it one for the purpose of state law); *Gendek v. Jehangir*, 119 Ill. 2d 338, 518 N.E.2d 1051 (1988) (holding that a stipulate dismissal counts as voluntary dismissal). Here, Plaintiffs plausibly allege that they filed a notice of voluntary dismissal under Alabama Rule of Civil Procedure 41(a)(1)(i) before Defendants answered or moved for summary judgment. Under Alabama law, such a notice operates as a voluntary, self-executing dismissal. Accepting Plaintiffs' allegations as true at the pleading stage, the Court concludes that the prior dismissal was voluntary. Illinois's saving statute expressly permits refiling within one year where an action is voluntarily dismissed by the plaintiff, and nothing in the statute limits that provision to dismissals entered by Illinois courts or federal courts. Because Plaintiffs filed the first action on October 1st, 2024, and refiled this action on April 8th, 2025—within one year of their original filing date—Defendants have not established, as a matter of law, that Plaintiffs' claims are time barred. Accordingly, dismissal on statute of limitations grounds is denied.

9

### B. Merits of Negligence or Wantonness Claim (Count I)

Defendants assert Plaintiffs do not claim to be clients, do not claim third-party beneficiary status, and offer no precedent supporting a duty owed by Defendants to Plaintiffs. To state a negligence claim under Illinois law, a plaintiff must allege that the defendant owed a duty of care arising from the relationship between the parties. *See Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436 856 N.E.2d 1048, 1057 (2006). While a legal-malpractice claim requires an attorney–client relationship giving rise to a professional duty of care, Illinois recognizes a narrow exception where a nonclient is an intended "third-party beneficiary" of the attorney–client relationship. *Mihailovich v. Laatsch*, 359 F.3d 892, 904 (7th Cir. 2004). This narrow exception requires a clear indication that the representation was intended to directly benefit the third party. *Pelham v. Griesheimer*, 92 Ill.2d 13, 64 Ill.Dec. 544, 547 –548 N.E.2d 96, 100–101 (1982); *Nat'l Union Ins. Co. v. Dowd & Dowd, P.C.*, 2 F. Supp. 2d 1013, 1019 (Norgle, C.) (N.D. Ill. 1998). Alternatively, attorneys may, in limited circumstances, be subject to ordinary negligence principles, unrelated to their direct or third-party representation, when engaging in conduct "foreign to the duties of a lawyer" or outside the provision of legal services. *See Erie Ins. Group v. Alliance Env't., Inc.*, 921 F. Supp. 537, 542 (Hamilton, D.) (S.D. Ind. 1996), aff'd sub nom. *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889 (7th Cir. 1996); *Walls v. VRE Chicago Eleven, LLC,* 344 F. Supp. 3d 932, 949 (Durkin, T.) (N.D. Ill. 2018). Lastly, Illinois law generally bars negligence claims seeking solely economic loss. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 82 435 N.E.2d 443, 449 (1982). Courts applying Illinois law have treated losses arising from wire transfers and related financial consequences as economic loss for purposes of *Moorman*, even absent contractual privity. *Gondeck v. A Clear Title & Escrow Exch., LLC*, 47 F. Supp. 3d 729, 746 (Feinerman, G.) (N.D. Ill. 2014).

Defendants argue that Plaintiffs' negligence claim must be dismissed because no duty runs from Defendants to Plaintiffs. (Dkt. 15 at *8.) Defendants contend that duties owed by attorneys arise only from an attorney-client relationship or intended third-party beneficiary status arising from

10

such a relationship, and that neither applies here. *Id.* at *8–10. They assert that Plaintiffs effectively concede the case sounds in professional negligence because they brought this action against Defendants "in their capacity as an attorney and law firm," despite conceding they are not clients or third-party beneficiaries. *Id.* Defendants further argue that Plaintiffs seek purely economic loss, namely, the misdirected wire funds and related costs, and that Illinois' economic loss doctrine bars negligence recovery for such losses even absent contractual privity. *Id.* at *10–11.

Plaintiffs respond that the duty should be analyzed under third-party negligence principles. (Dkt. 21 at *6.) Plaintiffs argue that attorneys should not be protected from third-party victims where in the context of a scam, there is effectively no client, only a criminal and a victim. (Dkt. 21 at *7.) Plaintiffs assert Defendants should have been reasonably diligent and should have implemented safeguards to detect such a common scam. *Id.* As to the economic loss doctrine, Plaintiffs argue that the loss of money does not constitute the type of economic loss contemplated by *Moorman*, and that money can constitute "other property" sufficient to remove the claim from *Moorman's* bar. (Dkt. 21 at *11.) Plaintiffs additionally invoke conversion principles, arguing that a claim for the wrongful deprivation or detention of money is distinct from an ordinary negligence claim for economic loss. (Dkt. 21 at *12.)

Since Plaintiffs concede they do not allege—and cannot allege—an attorney-client relationship, the Court's analysis is limited to whether Plaintiffs are subject to the narrow third-party beneficiary exception or whether Defendant's have violated a duty to Plaintiffs under ordinary negligence principals. Plaintiffs claim fails under either analysis. First, Plaintiffs expressly disclaim the third-party intended beneficiary exception to the scam transaction, foreclosing their ability to rely on its protections. Second, to the extent Plaintiffs attempt to proceed under ordinary negligence principles by characterizing Defendants' conduct as non-legal or foreign to the duties of a lawyer, that theory likewise fails. While Illinois law recognizes that attorneys may, in limited circumstances, be

11

subject to ordinary negligence principles for conduct foreign to the duties of a lawyer, the conduct alleged here, however, (receiving holding and dispersing client funds through a trust account) was performed in Defendants' capacity as attorneys providing professional services to a client, albeit a false one. Because the alleged acts are inseparable from the Defendants' role as a lawyer, Plaintiffs claim fails.

Even assuming a duty could arise under general Illinois negligence principles, Plaintiffs' negligence claim is independently barred under the economic loss doctrine. Illinois courts have consistently treated wire transfer losses and related financial consequences as purely economic loss. Because Plaintiffs seek recovery solely for economic loss unaccompanied by personal injury or damage to other property, the economic loss doctrine provides an independent basis for dismissal of this count. Accordingly, Plaintiffs' claims sounding in professional or ordinary negligence, cannot survive.

## C. Merits of Conversion Claim (Count II)

While the Court has determined Plaintiff's claims fail in negligence, the Court must determine if those claims can survive under another theory of liability, specifically conversion. Defendants assert they cannot, contending that the facts alleged here do not satisfy the elements of conversion as a matter of Illinois law. (Dkt. 22 at *11.)

To prove conversion under Illinois law, a plaintiff must establish four elements: "(1) An unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff for possession thereof." *Meyer Tech. Sol., LLC v. Kaegem Corp.,* No. 17 C 281, 2018 WL 1427130 (Leinenweber, H.) (N.D. Ill. Mar. 22, 2018) (citing *Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988)). Illinois courts have previously found that conversion liability exists "notwithstanding that the wrongdoer did not apply the property to his own use" and that "an agent is guilty of conversion although he acts in good faith for a principal

who receives the benefit." *Fortech, LLC v. R.W. Dunteman Co.*, 366 Ill. App. 3d 804, 810–812 (2006). It is sufficient to allege that the defendant exercised control over the property in a manner inconsistent with the plaintiff's right to possession. *Morissette v. United States*, 342 U.S. 246 (1952).

Defendants argue that Plaintiffs' conversion claim fails as a matter of law for three reasons. First, they contend that conversion cannot lie where the plaintiff voluntarily or mistakenly transferred the funds in the first instance. (Dkt. 22 *12.) Second, Defendants argue that Plaintiffs fail to allege wrongful control because Defendants did not convert the funds to their own personal use and were themselves victims of the same scam. (*Id.* at *14.) Third, Defendants contend that a wire transfer does not involve specific, identifiable property capable of conversion, and that Illinois law does not recognize conversion of intangible rights. (*Id.* at *15.)

Plaintiffs, by contrast, argue that cases barring conversion based on voluntary transfer involve situations where money was intentionally paid to the defendant (such as overpayment or satisfaction of a debt) and are therefore inapposite. (Dkt. 21 at *13–14.) Thus, even if the transfer was voluntary, Plaintiffs contend that, Illinois courts have recognized conversion claims despite initial voluntary transmission. (Dkt. 21 at *13–15) (citing *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 346 Ill. App. 3d 996, 1006, 806 N.E.2d 280, 287 (2d Dist. 2004)*; Addante v. Pompilio*, 303 Ill. App. 172 (1940); and *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 282 Ill. App. 3d 1052 (1996)). Plaintiffs also assert that this case involves a complete misdirection of funds, not a voluntary payment to Defendants, and that Illinois courts have recognized conversion claims in analogous circumstances. (Dkt. 21 at *13.) Lastly, conversion does not require personal benefit to the Defendant. Unauthorized control inconsistent with the Plaintiffs' ownership rights is sufficient, particularly where, as here, Defendants refused to return the funds after demand. (Dkt. 1 at *11–12); *Fortech*, 366 Ill. App. 3d 804, 812 (2006).

The Court believes Plaintiffs have pled a cognizable conversion claim. Plaintiffs plausibly allege each element of conversion: (1) a right to the misdirected funds, an immediate right to their possession, (2) a demand for return, and (3) Defendants' refusal to comply. Defendants' voluntary-transfer argument does not warrant dismissal at the pleading stage. The cases on which Defendants rely involve scenarios where a plaintiff deliberately paid money to the defendant—whether to satisfy a debt, make a deposit, or otherwise transact with the defendant directly—and later sought its return. This case is fundamentally different. Plaintiffs allege that the funds were misdirected entirely because of the scam and were never intended as payment to Defendants. That distinction aligns this case with *Bill Mare's*, *Addante*, and *Roderick Development,* each of which recognized a viable conversion claim despite the plaintiff's initial, albeit unwitting, transmission of funds. *See Bill Marek's*, 346 Ill. App. 3d 996, 1006, 806 N.E.2d 280, 287 (2d Dist. 2004) (finding conversion where defendant mistakenly received plaintiff's funds from a third party due to an administrative error, reasoning that because there was no creditor-debtor relationship and the funds were never voluntarily transferred by the plaintiff to the defendant, the funds were subject to conversion); *Addante*, 303 Ill. App. 172, 173–75, 25 N.E.2d 123, 124–25 (1st Dist. 1940) (sustaining conversion claim where plaintiff voluntarily sent money to defendant for the benefit of a third party and defendant thereafter refused to return the funds upon demand, holding that the money retained its character as plaintiff's property and was not voluntarily transferred to defendant as payment of any obligation); *Roderick,* 282 Ill. App. 3d 1052, 1053, 668 N.E.2d 1129, 1131 (1st Dist. 1996) (recognizing conversion claim where defendant refused plaintiff's demand to disburse funds to which plaintiff was entitled, concluding that refusal to return funds after demand was sufficient to establish wrongful dominion and control). As in those cases, the relevant question is not whether Plaintiffs initiated the transfer, but whether Defendants' retention of the funds after demand was inconsistent with Plaintiffs' right to possession. Plaintiffs have plausibly alleged that it was.

Defendants' argument that they did not personally benefit from the funds fares no better. Illinois law is clear that conversion does not require the defendant to have applied the property to their own use. *Fortech*, 366 Ill. App. 3d at 812. Unauthorized control inconsistent with the Plaintiff's ownership rights is sufficient, and Plaintiffs have alleged precisely that. Whether Defendants were themselves victims of the scam goes to the merits of the claim and cannot be resolved on a motion to dismiss. Accordingly, Count II survives and Defendants' Motion to Dismiss the conversion claim is denied.

**CONCLUSION**

For the foregoing reasons, the Court denies Defendants Anand and Anand P.C.'s Motion to Dismiss Plaintiffs claims pursuant to Rule 12(b)(1) and denies their Motion to Dismiss Plaintiffs' conversion claim (Count II) pursuant to Rule 12(b)(6). The Court grants Defendants' Motion to Dismiss Plaintiffs' negligence and wantonness claim (Count I) pursuant to Rule 12(b)(6), with prejudice [15].

**IT IS SO ORDERED.**

Date: 3/11/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge